**No. 42286.**—Protests 928602–G, etc., of Kwong Yuen & Co. et al. (New York).

EVANS, Judge: This is an action against the United States involving the reliquidation of entries covered by the protest enumerated above. The present protest claims in brief that the collector did not follow the judgment made by this court in its original decision. The court restored the cases to the docket for further information which appeared necessary in order to reach a definite conclusion both as to the currency of purchase and as to the rate of conversion. The order restoring the cases to the docket reads as follows:

EVANS, Judge: These are suits against reliquidations made by the collector of customs at the port of New York following a decision and judgment of this court (Abstract 34974) upon the question of the proper rate to be used in the conversion of certain Chinese currencies into United States money. The suits involved in the decision cited, in which plaintiffs claim reliquidation was improperly made were numbered 691571–G, 724623–G, 728290–G, 728296–G, 729962–G, and 741120–G.

In the instant case plaintiffs claim that the collector has not followed the judgment of the Customs Court dated October 21, 1936, directing you to reliquidate "converting the currency at the rate proclaimed for the Mexican dollar at the beginning of the quarter in which the merchandise was exported in each case."

No testimony has been offered to sustain the allegations of the pleadings, plaintiff's attorney contenting himself, when the cases were called for trial, with an oral repetition of the charge that the collector had failed to follow the court's judgment, and adding the following:

Accordingly I offer in evidence the record in Protest 691579–G, decided in Abstract 34974, which stipulation and decision covered these particular entries; and rest.

The collector's letters upon which the cases were originally submitted were in substantially the following form:

The merchandise covered by the entry in question was consulated in Tientsin, China, on the basis of price units and incidental packing and shipping expenses in Mexican dollars.

The exportation was made after April 6, 1933, and on a date when the Mexican dollar was exchangeable dollar for dollar with the Yuan Tientsin dollar, which currency on date of the goods shipment from China was quoted by the Federal Reserve Bank as possessing a value that varied five percent or more from the value proclaimed for the Mexican dollar at the beginning of the quarter of the year during which the goods were exported.

The entered or appraised value in Mexican currency was thereupon converted to United States money at Federal Reserve Bank equivalent quoted for the Yuan Tientsin dollar on the date of exportation from China to accord with the instructions set forth in T. D. 46669.

Duty was assessed on the basis of the values so determined at the appropriate rates and under the appropriate paragraphs of the Tariff Act of 1930.

Note Section 522 of said Act, Article 824 (E-3) of the Customs Regulations of 1931 and record of export date as endorsed on face of entry.

The protest was received within the statutory time.

We therefore have in the record as now presented a statement by the collector that the entry was consulated on the basis of Mexican dollars and that the entered *or* appraised value in such currency was converted to United States money at the equivalent quoted for the Yuan Tientsin dollar and duty assessed upon the basis of the values so determined. The report would seem to indicate that the collector took either the entered or appraised value, whichever amounted to the most after conversion. Nothing has been added to the record as originally presented. The attorney for the government at the hearing of the original cases acquiesced in the submission upon the collector's letters. Having agreed to their admission, the government is bound by the facts therein stated, viz, that the reason for the conversion of the currency at the equivalent quoted for the Yuan Tientsin dollar was that the merchandise was invoiced or entered in Mexican dollars, which was exchangeable dollar for dollar with the Yuan Tientsin dollar.

An inspection of the papers without using anything in the way of expert knowledge, reveals much that favors the collector's action. On the face of each consumption entry is given, together with other details that do not now concern us, the value of the articles grouped in different classifications, and these values are expressed in "U. S. Dollars," that being the heading of the column under which they appear. Below the total of these values appear the following words and figures:

|  |  |
|---|---|
|  | 2973.75 |
| less chgs. | 886.80 |
|  | 2086.95 |

Tientsin $@ .250833

The consular invoice which accompanies this entry indicates that the currency was M$, which we take to mean Mexican dollars. The declaration of the shipper recites that "the currency in which the prices is paid is a silver currency," with no indication what particular silver currency.

The particular figures given above are taken from entry 843874, suit 928602–G, but a similar legend appears on the other entries except that on entry 711529, suit 928601–G, the amount of the entry is expressed in Shanghai dollars. Furthermore, we find on the sixth page of the invoice covered by suit 928602–G the words written in ink: "Entered as Tientsin dollars."

The handwriting of this notation compares with the handwriting on other papers in the files as that of the plaintiff's customs broker who made the entries.

Again, on the first page of the consular invoice covered by suit 928603–G we find the notation "Entered as Tientsin Silver Dollars" in the same handwriting. And on the consular invoice covered by suit 928604–G appears the notation in the same handwriting "Entered Currency—Tientsin Dollars."

These notations contradict the allegations of plaintiffs' attorney in his brief that the goods were entered in Mexican dollars.

The court cannot assume the duty of trying to reconcile the contradictions and confusion that appear to exist in this case, but will restore the same to the docket with instructions to the plaintiffs' attorney to produce oral testimony that will clear up the situation.

It is so ordered.

GENEVIEVE R. CLINE, J.
WALTER H. EVANS, J.
WILLIAM J. KEEFE, J.

New York, N. Y.,
Jan. 3, 1939.

When the case was again called, the importers' attorney made the following statement:

Mr. BLAUVELT: If the court please, these cases were submitted on the record. They are protests against the collector's refusal to reliquidate, in accordance with the court's decision, and the court in an opinion by Judge Evans put them back on the docket for testimony to clear up certain apparent discrepancies in the record.

Unfortunately, I find that the man who made the entry and apparently made the notations to which Judge Evans referred in his opinion is dead.

The importer has no records; the broker for whom the clerk worked and made the entry has no records which in any way explain these notations; and so I am forced to submit these cases again. But I do ask leave to file a brief, another brief, because I believe that these discrepancies are only apparent discrepancies which may be explained by a brief.

In the court's decision in protests 691579–G, etc., Abstract 34974, we held that, with exceptions not involved herein, the protests were sustained and stated that the collector of customs should reliquidate converting the Mexican dollar at the rate proclaimed for the quarter in which the merchandise was exported in each case.

The importer claims that the collector did not follow these directions.

At the last hearing, attorney for the importer abandoned protests 928601–G, 928603–G, and 928605–G.

A reexamination of the invoices involved herein discloses that Protest 928602–G covered consumption entry 843874, which embraces consular invoice #1327, certified May 31st before Vice Consul John Hubner at Tientsin, China, which has attached thereto commercial invoice dated at Peiping, China, May 29, 1933, covering packages 18 to 54, inclusive. The heading of each column of the commercial invoice under "Price Per Unit" and "Total Amount" has the abbreviation "Mex.$." The blue consular invoice carries forward the total amount of the commercial invoice in the column "Total Invoice Price" M$2,012.95, and notes the charges as M$960.80, which, added to the invoice total, makes a grand total of M$2,973.75.

The declaration of the seller or shipper, etc., recites:

the cargoes are packed with wood shavings and the currency in which the price is paid is a silver currency * * *.

The declaration was dated at Peiping and the endorsement on the consular invoice under the heading "amount of invoice" states "Mex.$2,973.75."

On the consumption entry in black ink there was a note:

Export date fr. China 6/5/33. Used Yuan Tientsin Dollar at F. R. .251666.

Immediately above this notation appear the figures: 6/5/33 .251666.

Since this last notation is in red ink, we take it to indicate that the collector adopted the sailing date and the rate of conversion as noted in black ink.

Attached to the consular and commercial invoice was a "Summary of Examination and Appraisement" sheet, on the back of which, under the heading of "Statistical," which according to the practice is made out by the broker who makes the entry, there is a statement, following other information, "Tientsin$ @ .250833."

With reference to entry 839278, covered by Protest 928604–G, which covered consular invoice 1021 certified by Vice Consul G. Warner, May 5, 1933, at Tientsin, we find exactly the same situation as described above with relation to the statement about the kind of currency involved, that is to say the commercial invoice and the consular invoice are stated in Mexican dollars while the consumption entry and the reverse side of the summary sheet state that the money used was Yuan Tientsin dollars; with this further exception that the rate of conversion was .246250 and the date of sailing was May 13, 1933, which items were checked in red ink, presumably by the collector.

The collector's answer to the instant protest, which is timely, reads as follows:

The protest is against our reliquidation. The entry was made in Tientsin dollars and was liquidated at the Federal Reserve rate for such currency. The entries enumerated in the decision and judgment order of October 21, 1936, re 691579–G, etc., (Abstract 34974) were reliquidated in conformity with that decision, and the conversion of Mexican dollars was made as directed by the court.

No decision was made respecting the conversion of Tientsin currency and so far as known, no protest was filed against our liquidation converting Tientsin dollars within 60 days of such reliquidation.

With respect to the last paragraph of the statement just quoted, we call attention to the original protests, a part of the record introduced herein, which claim in general terms that the collector has assessed duty on too great a value of the invoice currency, a value greater than that authorized by section 522 of the Tariff Act of 1930 or other provisions of that act. Said section 522 of the Tariff Act of 1930 relates to the conversion of currency. So the claim is broadly made that the collector in converting the currency assessed duty on the basis of too high a value, and not as to any particular currency.

In the collector's answer, filed in the original protests, the collector, as above noted, stated as follows in protest 728296–G, the entry which is involved in protest 928602–G of the instant protests—

The merchandise covered by the entry in question was consulated in Tientsin, China, on the basis of price units and incidental packing and shipping expenses in Mexican dollars.

The exportation was made after April 6, 1933, and on a date when the Mexican dollar was exchangeable dollar for dollar with the Yuan Tientsin dollar, which currency on date of the goods shipment from China was quoted by the Federal Reserve Bank as possessing a value that varied five percent or more from the value proclaimed for the Mexican dollar at the beginning of the quarter of the year during which the goods were exported.

The entered or appraised value in Mexican currency was thereupon converted to United States money at Federal Reserve Bank equivalent quoted for the Yuan Tientsin dollar on the date of exportation from China to accord with the instructions set forth in T. D. 46669.

\*      \*      \*      \*      \*      \*      \*

and in protest 725252–G, the entry which is involved in protest 928604–G of the instant protests, the collector's answer reads:

The merchandise covered by the entry in question was consulated in Shanghai, China, on the basis of price units and incidental packing and shipping expenses in Mexican dollars.

The exportation was made after April 6, 1933, and on a date when the Mexican dollar was exchangeable dollar for dollar with the Yuan Shanghai dollar, which currency on date of the goods shipment from China was quoted by the Federal Reserve Bank as possessing a value that varied five percent or more from the value proclaimed for the Mexican dollar at the beginning of the quarter of the year during which the goods were exported.

The entered or appraised value in Mexican currency was thereupon converted to United States money at Federal Reserve Bank equivalent quoted for the Yuan Shanghai dollar on the date of exportation from China to accord with the instructions set forth in T. D. 46669.

\*      \*      \*      \*      \*      \*      \*

This answer clearly stated that the entered or appraised value in Mexican currency was thereupon converted into United States money. It would therefore appear that the collector disregarded the statement by the importer on entry that he, in converting his currency for entry, had used Tientsin dollars and that the collector as a matter of fact did convert on the basis of the Tientsin or Mexican dollar. The collector's answers to the protests show that he treated the Yuan Shanghai, the Yuan Tientsin, and the Mexican dollar as being of the same value. The importer now insists that the currency of the invoices was the Mexican dollar.

That statement is supported by the data on the commercial and consular invoices noted above. He also asserts that under section 481 of the Tariff Act of 1930 it would be the duty of the importer to state the purchase price of each item in the currency of purchase and that in the instant case the importer complied with the provisions of said section. He further stated:

The Consul has, in accordance with the law, certified that the currency of the invoice is Mexican dollars. No one can thereafter change or alter that currency by any statement.

We find no such certificate on the invoices involved. All the consul certified to was that the invoices in question were produced by the signer of the declaration thereon and that he was satisfied that the person making the declaration was the person he represented himself to be and that the fee of $2.50 United States gold had been paid by affixing a stamp and that said fee was equivalent to a certain amount in Yuan dollars.

On the memorandum, made apparently at the date of reliquidation, we find under the reliquidation stamp, August 16, 1937, "Abstract 34974" by rubber stamp. Accompanying this data we find "N. C. not entered in Mex. $ (initials)." We understand this notation to mean that no change was made because the entry was not entered in Mexican dollars.

The reason given for not producing the information desired by the court was that the person who made the entry had since died. There was no claim made that the man who made the purchase of the goods had since died nor that the Government liquidator had passed on. Someone ordered these goods, someone approved the payment for them, someone knew and must now know what money was used in the purchase of the same. In the absence of any proof as to these matters the court is in no better position to reach a conclusion than it was when it restored the case to the docket for additional testimony. We are not required to guess about these transactions. The collector interprets the papers in the case in one way; importer's attorney interprets them in another manner. We cannot reconcile the difference without proof of the facts necessary to warrant our conclusion. We therefore conclude that the importer has not overcome the presumption of correctness attaching to the collector's action.

The protests are therefore overruled. Judgment will be rendered accordingly. It is so ordered.